UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BARRY KIRSCHENBAUM,**<br><br>Plaintiff,<br><br>v.<br><br>**ASTA HEALTHCARE COMPANY and MICHAEL GILLMAN,**<br><br>Defendants. | No. 12 C 9435<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Barry Kirschenbaum initiated this lawsuit against Asta Care Center of Pontiac, LLC (Asta), Asta Healthcare Co. (Asta Healthcare), and Michael Gillman, alleging intentional interference with contractual obligations. On September 3, 2013, the Court dismissed without prejudice Count I of the First Amended Complaint, which had alleged a breach of contract claim against Asta, after the parties agreed that diversity does not exist between Kirschenbaum and Asta. (Dkt. 61). Similarly, the Court dismissed without prejudice Asta's Counterclaim for lack of jurisdiction. (*Id.*). On September 16, 2013, Plaintiff filed a Second Amended Complaint, deleting Count I and Asta as a defendant, and reiterating the Count II allegations. (Dkt. 67).

In his Second Amended Complaint (Complaint), Kirschenbaum alleges that Asta Healthcare and Gillman intentionally interfered with Asta's obligations to Kirschenbaum under two promissory notes dated November 20, 2002 (2002 Note)

and November 12, 2004 (2004 Note, and together with the 2002 Note, the Notes). (Compl. ¶¶ 1, 7–19). Kirshenbaum contends that Asta Healthcare and Gillman "intentionally diverted and converted Asta's assets for its or his own use and/or to the use of other entities owned and/or controlled by Gillman with the result that Asta was or is unable to pay the sums due to Kirschenbaum on either the 2002 Note or the 2004 Note." (*Id.* ¶ 19). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

On January 28, 2013, Defendants filed a Motion to Dismiss Count II of the First Amended Complaint pursuant to Rule 12(b)(6), for failure to state a claim, and to strike various allegations as immaterial and irrelevant pursuant to Rule 12(f). (Dkt. 16). The Court will treat this motion as a motion to dismiss the sole count in the Second Amended Complaint. (Dkt. 75). On September 24, 2013, Defendants filed a Motion to Dismiss the Second Amended Complaint for Failure to Join Party under Rule 19(b), pursuant to Rule 12(b)(7). (Dkt. 70). For the reasons set forth below, the motions to dismiss are denied.

### I. FACTUAL ALLEGATIONS[1]

Kirschenbaum alleges that in November 2002, Asta executed and delivered the 2002 Note to him. (Compl. ¶ 7). The principal amount of the 2002 Note is $50,000, and it bears interest at 8% per annum. (*Id.* ¶ 7 & Ex. A). In November 2004, Asta

---

[1] The Court accepts as true all factual allegations in Plaintiff's Complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

executed and delivered the 2004 Note to Kirshenbaum. (*Id.* ¶ 8). The principal amount of the 2004 Note is $112,500, and it bears interest at 10% per annum. (*Id.* ¶ 8 & Ex. B). Asta has not made any principal or interest payments due on either of the Notes. (*Id.* ¶¶ 13–14). On November 26, 2012, Kirshenbaum made a written demand to Asta, Asta Healthcare, and Gillman, demanding full payment of all amounts due on the Notes. (*Id.* ¶ 15 & Ex. C).

Asta Healthcare is the "Manager" of Asta, as that term is used in the Illinois Limited Liability Company Act, 805 ILCS § 180/1, et seq. (Compl. ¶ 9). Gillman is the sole, or majority, shareholder of Asta Healthcare. (*Id.* ¶ 10). Kirshenbaum alleges that Gillman has treated the assets and liabilities of Asta Healthcare as his own and otherwise acted as the alter ego of Asta Healthcare. (*Id.* ¶ 12). Kirshenbaum contends that Gillman and Asta Healthcare have caused Asta to fail or refuse to pay Kirshenbaum the amounts due on the Notes. (*Id.* ¶ 17).

## II. DISCUSSION

### A. Failure to Join a Party Under Rule 19

Plaintiff dismissed his breach of contract claim against Asta, after acknowledging that there was no diversity between Plaintiff, who is a citizen of Illinois, and Asta, which is a limited liability company and is a citizen of both Florida and Illinois. (Dkt. 70 at ¶ 2). Plaintiff's sole remaining claim is for tortious interference against Asta Healthcare and Gillman. (Compl. ¶¶ 1, 7–19). After inquiry from the Court, Defendants moved to dismiss, pursuant to Rule 19, based on Plaintiff's failure to join an indispensable party, Asta. (Dkt. 70 at ¶ 4). Because Asta cannot be joined

without destroying diversity, Defendants argue that the case should be dismissed pursuant to Rule 12(b)(7). (*Id.*).

To determine whether a complaint must be dismissed for failure to join a party as required by Rule 19, the court conducts a two-step analysis. *Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 635 (7th Cir. 2009). First, the court determines whether the party is a "required" party under Rule 19(a). *Id.* Rule 19 provides that an absent party must be joined if joinder is feasible and

> (1) the court cannot accord complete relief among the existing parties in the party's absence, (2) the absent party's ability to protect an interest relating to the subject of the action will be impaired, or (3) an existing party would be subject to a substantial risk of multiple or inconsistent obligations if the absent party is not joined.

*XPO Logistics, Inc. v. Gallatin*, No. 13 C 1163, 2013 WL 3835358, at *2 (N.D. Ill. July 24, 2013) (citing Fed. R. Civ. P. 19(a)(1)). Second, if the court determines that the party is "required" but joinder is not feasible—usually because joinder would destroy diversity—the court must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *Askew*, 568 F.3d at 635. In this second step, the court considers "the prejudice to the existing parties, the adequacy of a judgment that would be rendered without the absent party, and whether the plaintiff would have an adequate remedy if the action were dismissed." *XPO Logistics*, 2013 WL 3835358, at *2 (citing Fed. R. Civ. P. 19(b)(1)–(4)). "If there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as 'indispensable' and the ac-

tion is subject to dismissal . . . under Federal Rule of Civil Procedure 12(b)(7)." *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999). The moving party carries the burden to establish that the missing party is both "required" and "indispensable." *XPO Logistics*, 2013 WL 3835358, at *2.

Defendants contend that Asta is a required party under Rule 19(a). (Dkt. 70 at ¶¶ 10–14). They argue that because Asta is the principal obligor on the Notes, and the liability of the remaining Defendants is contingent on what Asta does or does not owe on the Notes, "there is no feasible way for complete relief to be accorded without Asta." (*Id.* ¶ 11). Similarly, Defendants argue that Asta does not owe what Plaintiff contends it does and that without being a party, it would be precluded from defending the question of the extent of its liability. (*Id.* ¶ 12). Defendants also argue that there is "a great likelihood of inconsistent results" if Kirshenbaum's claim proceeds in Asta's absence. (*Id.* ¶ 13). If Plaintiff sues Asta in state court, the state court could determine that Asta has "much less liability" under the Notes than the amounts claimed here by Plaintiff. (*Id.*).

Although Defendants are correct that in order to prevail on a tortious interference with contract claim, Plaintiff must establish that Asta breached its contracts with Kirshenbaum by failing to make the requisite payments, it does not follow that Asta is a necessary party. *See TABFG, LLC v. Pfeil*, No. 08 C 6979, 2009 WL 1209019, at *3 (N.D. Ill. May 1, 2009) ("Although defendant is correct that to prevail on a tortious interference with contract claim, plaintiff must establish that the joint venture breached the joint venture agreement by failing to properly distribute the

profits, that does not make NT Prop. and Pfeil Commodities necessary parties."). Plaintiff alleges that Defendants caused Asta to fail or refuse to pay Kirshenbaum the amounts due on the Notes, despite his demand. (Compl. ¶ 17). "Whether other persons or entities may also be liable for [the breach] is irrelevant." *TABFG*, 2009 WL 1209019, at *3. Essentially, Asta Healthcare and Gillman argue that Kirshenbaum must name all joint tortfeasors in his complaint, but it is well settled in the Seventh Circuit that a joint tortfeasor is not a "required" party. *Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 871, 880 (7th Cir. 2004); *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503–05 (7th Cir. 1980); *XPO Logistics*, 2013 WL 3835358, at *3; *TABFG*, 2009 WL 1209019, at *3. Thus, "there is no rule that you cannot sue the interferer without also suing the party to your contract whom the defendant inveigled into breaking the contract." *Salton*, 391 F.3d at 880; *see XPO Logistics*, 2013 WL 3835358, at *3 (finding that to adjudicate whether defendant had tortiously interfered with plaintiff's contractual relations with certain nonparties, the nonparties were not required parties).

Defendants' specific arguments for why Asta is a required party fare no better. The Court can accord complete relief among Plaintiff and Defendants without Asta's presence. Defendants can introduce evidence limiting Asta's liability under the Notes without Asta being a party. *See Salton*, 391 F.3d at 880 ("When a plaintiff is harmed by the acts of several persons, all may be essential sources of evidence in a suit against any. But if this possibility automatically required that all be joined, the rule that joint tortfeasors are not by virtue of their jointness indispensable parties,

and the extension of that principle to the case in which the plaintiff is harmed by a breach of contract procured by a tortfeasor whom the plaintiff has sued without joining the contract breaker, would be overthrown."). If Plaintiff sues Asta in state court, any damages awarded to Plaintiff in this action would likely offset an award in state court—Plaintiff cannot "double dip" by collecting twice for one injury under both contract and tort. Even if Asta is ultimately responsible for any damages awarded here, Asta is not a required party. *See Walker v. Monsanto Co. Pension Plan*, No. 04 CV 436, 2007 WL 2481179, at *4 (S.D. Ill. Aug. 29, 2007) ("[T]he settled rule in both contract and tort [is] that a mere obligation to pay money in the event of a judgment does not mandate joinder of a party under Rule 19."). In sum, Defendants have not met their burden to establish that Asta is a required party.[2] Accordingly, their motion to dismiss pursuant to Rule 12(b)(7) is denied.

**B. Motion to Dismiss Under Rule 12(b)(6)**

In their motion to dismiss, Defendants contend that the statute of limitations bars any claim for intentional interference with contract, and, in any event, the Complaint fails to state a claim for intentional interference with contract. (Dkt. 16 at 3–6). Defendants also challenge paragraphs 10, 11, and 12 of the Second Amended Complaint as "irrelevant and immaterial" and move that they be stricken pursu-

---

[2] Because Defendants have failed to establish that Asta is a "required" party under Rule 19(a), the Court declines to consider whether Asta is an "indispensable" party under Rule 19(b).

ant to Rule 12(f) or dismissed pursuant to Rule 12(b)(6) for failure to state a cause of action.[3] (*Id.* at 6–8).

### *1. Applicable Legal Standard*

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A Rule 12(b)(6) motion to dismiss must be considered in light of the liberal pleading standard of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (internal citations and alterations omitted). Determination of the sufficiency of a claim must be made "on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis omitted). To avoid dismissal, a complaint must contain allegations that "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

---

[3] In the First Amended Complaint, these paragraphs were labeled 13, 14, and 15. (*Compare* Dkt. 13 at ¶¶ 13–15 *with* Dkt. 67 at ¶¶ 10–12).

### *2. Statute of Limitations*

The limitations period in Illinois to bring a claim of intentional interference with contract is five years.[4] 735 ILCS 5/13-205. "Tortious interference with contract is a contractual tort, for which the limitations period generally begins to run on the date of breach." *Federal Signal Corp. v. Thorn Automated Sys., Inc.*, 693 N.E.2d 418, 421 (Ill. App. Ct. 1998). The Illinois Supreme Court has held that when a tort arises out of a contractual relationship, the tolling "commences at the time of the breach of duty, not when the damage is sustained. The principal reason is that the breach itself is actionable." *W. Am. Ins. Co. v. Sal E. Lobianco & Son Co.*, 370 N.E.2d 804, 807 (Ill. 1977) (citation omitted). With regards to a promissory note, "[a] cause of action accrues and the statute of limitations begins to run when a creditor may legally demand payment from a debtor." *Kozasa v. Guardian Elec. Mfg.*, 425 N.E.2d 1137, 1142 (Ill. App. Ct. 1981). For a "demand" note, "an actual demand for performance is an express condition precedent to the duty of performance. Thus, an action does not lie unless demand has been made and the statute of limitations begins to run from the date of demand." *Schreiber v. Hackett*, 527 N.E.2d 412, 413 (Ill. App. Ct. 1988). On the other hand, for a "term loan" note, the statute of limitations begins to run from the due date, regardless of whether demand was made. *See Federal Signal Corp.*, 693 N.E.2d at 421.

---

[4] Federal courts exercising diversity jurisdiction, as in this case, apply the substantive law of the state in which the court sits. *Erie Railroad Co. v. Thompkins*, 304 U.S. 64 (1938). "State law barring an action because of a statute of limitation is sufficiently 'substantive,' in the *Erie* sense, that a federal court in that state exercising diversity jurisdiction much respect it." *Threshermen's Mut. Ins. Co. v. Wallingford Mut. Ins. Co.*, 26 F.3d 776, 780 (7th Cir. 1994) (citation omitted).

Defendants argue that the two Notes specified maturity dates; therefore, any breach occurred on the maturity dates of the instruments: November 30, 2003, for the 2002 Note, and December 31, 2004, for the 2004 Note. (Dkt. 16 at 3–4; Dkt. 21 at 2–3). Plaintiff contends that the Notes were demand promissory notes, and that the time of breach occurred on November 26, 2012, when Plaintiff made a written demand for full payment on the Notes. (Dkt. 19 at 3–4).

Section 3-108 of the Uniform Commercial Code (UCC) states that a promissory note is "payable on demand" if it "(i) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (ii) does not state any time of payment." 810 ILCS 5/3-108(a). Alternatively, a promissory note is "payable at a definite time" if it is "payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued." *Id.* 5/3-108(b).

The 2002 Note states in relevant part:

> 1. Payment. FOR VALUE RECEIVED, ASTA on November 20, 2002 hereby promises to pay to the order of BARRY KIRSCHENBAUM ("LENDER") the principal sum of FIFTY THOUSAND dollars ($50,000) and to pay interest at 8% per annum . . . on the outstanding principal amount hereunder on the last day of each calendar quarter, commencing November 30, 2003. . . .
>
> 2. Events of Default. Notwithstanding the maturity date set forth above, the maturity of this Note may be accelerated by Seller upon the occurrence of any of the following events . . . .

(Compl. Ex. A). The 2004 Note is identical except for the dates, interest, and the amounts owed. (*Compare id.* Ex. A *with id.* Ex. B).

After carefully reviewing the Notes, the Court cannot determine as a matter of law whether they are demand or term notes. *Cf. N.W.I. Int'l, Inc. v. Edgewood Bank*, 684 N.E.2d 401, 407 (Ill. App. Ct. 1997) ("From an examination of the plain language of the instrument, if the trial court can determine that it is or is not a demand note, then it may make an appropriate ruling as a matter of law without resort to extrinsic evidence."). The lack of "on demand" language, the use of the term "maturity date," and the inclusion of an acceleration clause as an event of default suggest that the Notes are payable at a definite time. *See id.* (inclusion of terms allowing bank to accelerate payment suggest that note is "payable at a definite time"); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 765 (7th Cir. 2010) (observing that "specified events of default may neuter contract language describing a loan as payable on demand"); Michael L. Weissman, *Commercial and Industrial Loan Documentation* § 4.4 (IICLE 2012) ("A note that is truly a demand note doesn't require events of default—a demand for payment is all that is necessary."). However, the lack of a due date and the use of the term "commencing" suggest that the Notes are payable on demand. *See* 810 ILCS 5/3-108(a) (promissory note is "payable on demand" if it "does not state any time of payment").

Defendants argue that each Note clearly "states that the date on which the payment of principal and interest is to commence is the scheduled date of payment and the maturity date of the Note." (Dkt. 21 at 2). However, the Court does not find the language so clear and unambiguous. While the Notes use the term "maturity date," it is not a defined term and does not refer to any specific date. Further, the term

"commencing" is defined as "beginning" or "starting." *The New Oxford American Dictionary* 341 (2d ed. 2005). Thus, if the "maturity date" is *beginning* or *starting* on a certain date, the Notes are not "payable at a definite time." *See* 810 ILCS 5/3-108(b). Instead, the parties may have intended interest to begin accruing on the commencing date.[5] Indeed, if the Notes were due in full on the same day that interest began accruing, the Notes would not include an interest amount. In sum, because the Notes contain ambiguous terms, the Court cannot rule as a matter of law that they were "payable at a definite time." Accordingly, Defendants have not met their burden to establish that Plaintiff's claim is time barred.

Defendants are free, however, to raise the time-bar issue on summary judgment. Because the language of the Notes is unclear and ambiguous as to whether the parties intended them to be demand notes, extrinsic evidence may be offered regarding the intentions and conduct of the parties at and prior to the execution and delivery of the Notes. *N.W.I. Int'l*, 684 N.E.2d at 407 ("[I]f the language of the note is unclear and ambiguous as to whether the parties intended it to be a demand note, only then may evidence be offered regarding the intentions and conduct of the parties at and prior to the execution and delivery of the instrument."). On summary judgment, if the Court can determine the intent of the parties from the undisputed facts, then the Court can determine as a matter of law whether the instruments are demand or term notes. *Id.* at 408 ("If the intent of the parties can be determined from facts not

---

[5] Indeed, in arguing that Asta is a necessary party, Defendants contend that Asta does not owe the full amount on the Notes even yet, having made partial principal and interest payments. (Dkt. 78 at 2, 4).

in dispute, then the meaning of the contract can be determined by the court as a matter of law."). Otherwise, if disputed facts remain, the issue as to whether the parties intended the Notes to be "on demand" must be submitted to a jury. *Id.*

### 3. Intentional Interference with Contract

Defendants argue that Plaintiff has failed to state a claim for intentional interference with contract. (Dkt. 16 at 4–6). Because Defendants are alleged to be officers or directors of Asta, Defendants contend that the Complaint must allege malicious or unjustifiable conduct. (*Id.* at 5). Plaintiff asserts that under liberal federal pleading requirements, the Complaint clearly provides Defendants with the substance of Plaintiff's claims. (Dkt. 19 at 4–6).

The elements of a claim for intentional interference with contractual relations under Illinois law are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (citations omitted); *accord Kim v. Kim*, 360 F. Supp. 2d 897, 903 (N.D. Ill. 2005). Further, Illinois "recognize[s] a privilege for corporate officers and directors to use their business judgment and discretion on behalf of their corporations. The existence of the privilege [is] based upon [the Illinois Supreme Court's] recognition that the duty of corporate officers and directors to their corporations' shareholders outweighs any duty they might owe to the corporations' con-

tract creditors." *HPI Health Care*, 545 N.E.2d at 677. Thus, where a tortious interference claim is directed against a corporate officer acting to influence the actions of his corporation, the plaintiff must allege that the defendant's conduct was malicious or unjustified. *Id.* "The term 'malicious,' in the context of interference with contractual relations cases, simply means that the interference must have been intentional and without justification." *Id.* The privilege is not absolute, however, and a defendant protected by the privilege "is not justified in engaging in conduct which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege." *Id.* at 678. Here, Defendants are alleged to have tortiously interfered with Plaintiff's contracts with Asta, and are also alleged to be part owners or officers of Asta. (Compl. ¶¶ 1, 9–10, 17–19). Accordingly, the qualified privilege extends to Defendants, and Plaintiff must plead a lack of justification.

Plaintiff alleges the existence of the Notes and that Defendants were aware of them. (Compl. ¶¶ 7–8, 17, 19 & Ex. C). The Notes, each signed by Gillman, are attached to the Complaint. (*Id.* Exs. A, B). The Complaint further alleges that Defendants "caused, and are continuing to cause, Asta to fail or refuse to pay Kirshenbaum the amounts due [on the Notes]" and "intentionally diverted and converted Asta's assets to Gillman's own use and/or the use of other entities owned and/or controlled by Gillman, with the result that Asta was, and is, unable to pay the sums due Kirschenbaum on either the 2002 Note or the 2004 Note." (*Id.* ¶¶ 17–18). Finally, Plaintiff alleges that he was damaged when Asta was unable to pay the amounts due on either of the Notes. (*Id.* ¶¶ 13–14, 16, 19).

In reviewing the sufficiency of the Complaint under the *Twombly/Iqbal* plausibility standard, the court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Thus, Plaintiff's allegation that Defendants "intentionally diverted" Asta's assets for Gillman's "own use" which resulted in Asta being unable to pay Plaintiff the amounts due on the Notes (Compl. ¶¶ 18–19) "is sufficient to state a claim for intentional interference, and specific enough to allow defendants to draft a responsive pleading." *Kim*, 360 F. Supp. 2d at 904; *see Mid-American Energy Co. v. Util. Res. Corp.*, 03 C 2313, 2003 WL 22359526, at *3 (N.D. Ill. Oct. 15, 2003) ("[A] breach induced solely for the defendant's gain, or solely for the purpose of harming the plaintiff is not justified because such conduct would not have been done to further the [corporation's] business."). The factual allegations in the Complaint "give [Defendants] notice of what the case is all about and . . . show how, in [Plaintiff's] mind at least, the dots should be connected." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). Given the straightforward nature of Plaintiff's claim, *Twombly* and *Iqbal* require nothing more. *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)); *cf. McCauley*, 671 F.3d at 616–17 ("The required level of factual specificity rises with the complexity of the claim."). Accordingly, Defendants' motion to dismiss the intentional interference allegation for failure to state a claim is denied.

### *4. Motion to Strike*

Defendants contend that paragraphs 10, 11, and 12 should be stricken from the Complaint. (Dkt. 16 at 6–8). They assert that the paragraphs "should either be stricken pursuant to Rule 12(f) as irrelevant and immaterial, or dismissed pursuant to Rule 12(b)(6) for failure to state a claim." (*Id.* at 6). Defendants argue that Gillman's ownership of Asta Healthcare is not relevant to the tortious interference claim and "woefully inadequate to state a separate claim to pierce the corporate veil." (*Id.* at 7–8). Plaintiff counters that the allegations contained in paragraphs 10, 11, and 12 "are to put Defendants on notice that Kirschenbaum intends to establish that Asta Healthcare was the mere alter ego of Gillman when it came to the [tortious interference claim]." (Dkt. 19 at 6).

Rule 12(f) permits a court, on a party's motion, to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." However, "because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor . . . and are infrequently granted." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 394 (3d ed. 2004); *accord Riemer v. Chase Bank, N.A.*, 275 F.R.D. 492, 494 (N.D. Ill. 2011); *see Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000) ("Courts generally disfavor motions to strike affirmative defenses because they potentially serve only to cause delay."). "A motion to strike under Rule 12(f) is not a mechanism for deciding disputed issues of law or

fact, especially where, as here, . . . the factual issues on which the motion to strike largely depends are disputed." *Rimer*, 275 F.R.D. at 494. Thus, "Courts will strike portions of a complaint only if the challenged allegations are so unrelated to the present claim as to be void of merit and unworthy of consideration." *Geschke v. Air Force Ass'n*, 02 C 50271, 2002 WL 31253746, at *1 (N.D. Ill. Oct. 8, 2002). The Court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, immaterial, impertinent, or scandalous matter. *Riemer v. Chase Bank USA, N.A.*, 275 F.R.D. 637, 639 (N.D. Ill. 2011); *see Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

After carefully reviewing paragraphs 10, 11, and 12, the Court cannot find that the challenged paragraphs are so unrelated to the tortious interference claim as to be unworthy of consideration. Indeed, these paragraphs personally tie Gillman to the Complaint's allegations that Asta Healthcare caused Asta not to honor the Notes. While Asta Healthcare was Asta's manager, and thus directly involved in the alleged interference, Gillman is alleged to have diverted Asta's assets to his own use by acting as the alter ego of Asta Healthcare. (Compl. ¶¶ 10–12, 17–19).

Further, the Complaint is not making a separate claim to pierce the corporate veil of Asta to Asta Healthcare. Instead, the Complaint alleges that Asta Healthcare is the alter ego of Gillman. (Compl. ¶¶ 10–12). In any event, an attempt to pierce the corporate veil is not a cause of action, but instead is a method of imposing liability on the underlying cause of action. *Central States, Se. & Sw. Areas Pension Fund v. Brumm*, 264 F. Supp. 2d 697, 700 n.3 (N.D. Ill. 2003) ("Piercing the corporate veil,

however, is a doctrine to be applied in an underlying cause of action; it is not an action itself."); 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.28 (1999) ("An attempt to pierce the corporate veil is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract."); *Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So.2d 1242, 1245 (Fla. Dist. Ct. App. 1995) ("Piercing a corporate veil is not itself a cause of action any more than the doctrine of *respondeat superior* is."). Defendants' request to strike paragraphs 10, 11, and 12 from the Complaint pursuant to Rule 12(f) or Rule 12(b)(6) is denied.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Count II of Plaintiff's Amended Complaint and to Strike Certain Other Paragraphs from the Amended Complaint [16] and Defendants' Motion to Dismiss Second Amended Complaint for Failure to Join Party Under Rule 19(b) [70] are DENIED. Defendants shall file an Answer to the Second Amended Complaint within 14 days of the date of this order.

E N T E R:

Dated: October 21, 2013

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge